IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **CITY OF MELBOURNE, FLORIDA,** | MDL No. 2:18-mn-2873-RMG |
| **Plaintiff,** | This Document Relates To: |
| **v.** | **Case No. 2:20-cv-2810-RMG** |
| **CHEMGUARD, INC.,** **PERIMETER SOLUTIONS, LP,** **and JOHN DOE DEFENDANTS 1-49,** | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

_____/

CITY OF MELBOURNE, FLORIDA ("Plaintiff" or "the City") files this Complaint against the Defendants CHEMGUARD, INC., PERIMETER SOLUTIONS, LP, and JOHN DOE DEFENDANTS 1-49 (collectively "Defendants"), and in support thereof alleges as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiff brings this action against Defendants to recover any and all past and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, and monitoring of the ongoing contamination of its Property, including its groundwater, soil, and sediment caused and/or created by Defendants' Aqueous Film Forming Foam ("AFFF") products.

2.    Plaintiff is the owner of the land upon which the Orlando Melbourne International Airport (the "Airport") is located.

3.    Plaintiff is also the owner and operator of the Melbourne Fire Training Facility (the "Fire Training Facility") and owns the lands upon which it is located. The Fire Training Facility is located at 1980 Hughes Road, Melbourne, FL 32935.

4. Plaintiff is also the owner and operator of the Melbourne Fire Station Facilities ("Fire Stations") and owns the lands upon which they are located, as follows:

     a. 2937 Sarno Road, Melbourne, FL 32935;

     b. 1530 Tower Access Road, Melbourne, FL 32901;

     c. 1500 S. Hickory Street, Melbourne, FL 32901;

     d. 151 E. University Boulevard, Melbourne, FL 32901;

     e. 2470 Croton Road, Melbourne, FL 32935;

     f. 3721 N. Wickham Road, Melbourne, FL 32935;

     g. 850 Eber Road, Melbourne, FL 32901; and

     h. 865 W. Eau Gallie Boulevard, Melbourne, FL 32935.

The Airport, the Fire Training Facility, and Fire Stations, and the lands thereon, are collectively referred to herein as the "Property."

5. At various times from the 1960s through today, Defendants manufactured, marketed, and/or sold aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, and hangar fires, as well as other types of fires.

6. Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), specifically, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or perfluorononanoic acid ("PFNA") and/or perfluorohexanesulfonic acid ("PFHxS"), and/or precursors of PFAS, PFOA, PFOS, PFNA, and/or PFHxS.

7. PFOA, PFOS, PFNA, and/or PFHxS are man-made, manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

2

8.      Defendants manufactured, marketed and/or sold AFFF with the knowledge that these toxic compounds would be released into the environment during fire protection, training, response activities, and cleaning vehicles containing AFFF even when the AFFF was used as directed and intended by the manufacturer.

9.      At all times pertinent herein beginning decades ago and continuing to this date, AFFF containing PFOA, PFOS, PFNA, and/or PFHxS has been used and stored at the Property for fire protection, training, and response activities at the Property.

10.     During these activities, AFFF was used as directed and intended by Defendants, which allowed PFOA, PFOS, PFNA, and/or PFHxS to enter the environment. When sprayed onto outdoor surfaces as intended, these compounds migrated through the soil and groundwater, thereby contaminating the Property.

11.     There are multiple areas on the Property, including land, water, and structures, that have been contaminated with PFOA, PFOS, PFNA, and/or PFHxS through the use of AFFF.

12.     The Property has been, and continues to be, contaminated by Defendants' PFOA, PFOS, PFNA, and/or PFHxS.

13.     On July 24, 2019, the Florida Department of Environmental Protection ("FDEP") sent a letter to the Melbourne Fire Training Facility located in the City of Melbourne, Florida, stating that the PFOA and PFOS are contaminants of emerging concern that have historically been used in a wide variety of AFFF; that the Fire Training Facility indicated usage of AFFF; and that the FDEP detected the presence of PFAS compounds, namely PFOA and PFOS, in the soil and groundwater samples taken at the Fire Training Facility above the applicable provisional clean-up target levels.

14.     At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of the Property through the use of AFFF as Defendants did not disclose the toxic nature and harmful effects of the AFFF which Defendants designed, manufactured and sold with PFOA, PFOS, PFNA, and/or PFHxS.

15.     With regard to the Defendants' tortious and wrongful conduct herein alleged, the Defendants used the U.S. mail, interstate wires, federal and state judicial systems, regulatory filings and testimony, and other vehicles to promote, conceal, protect, and continue their tortious and wrongful conduct over many, many years.

16.     Through this lawsuit, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, dispose of, and monitor PFOA, PFOS, PFNA, and/or PFHxS contamination on the Property, including soil and groundwater, caused by the use of Defendants' AFFF containing PFOA, PFOS, PFNA, and/or PFHxS on the Property, as well as reasonable attorney's fees as this suit was brought in the public interest.

17.     Plaintiff also seeks damages and restitution for the diminution of value of the Property.

## II.  <u>PARTIES</u>

18.     Plaintiff is a Florida municipal government. Among its sources of drinking water, Plaintiff relies on surface water from rivers, streams, and canals and groundwater from regional well fields.

19.     Plaintiff owns the land upon which the Airport operates. The Airport is located at One Air Terminal Parkway, Suite 220, Melbourne, FL 32901-1888.

4

20.     Plaintiff is also the owner and operator of the Fire Training Facility and owns the lands upon which it is located. The Fire Training Facility is located at 1980 Hughes Road, Melbourne, FL 32935.

21.     Plaintiff is also the owner and operator of the Fire Station Facilities and owns the lands upon which they are located as follows:

    a.   2937 Sarno Road, Melbourne, FL 32935;

    b.   1530 Tower Access Road, Melbourne, FL 32901;

    c.   1500 S. Hickory Street, Melbourne, FL 32901;

    d.   151 E. University Boulevard, Melbourne, FL 32901;

    e.   2470 Croton Road, Melbourne, FL 32935;

    f.   3721 N. Wickham Road, Melbourne, FL 32935;

    g.   850 Eber Road, Melbourne, FL 32901; and

    h.   865 W. Eau Gallie Boulevard, Melbourne, FL 32935.

22.     Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin and authorized to do business in Florida, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Chemguard does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA, PFOS, PFNA, and/or PFHxS.

23.     Defendant Perimeter Solutions LP ("Perimeter") manufactured and sold to Plaintiff AFFF that contained PFOA, PFOS, PFNA, and/or PFHxS. A search of the Florida Department of State, Division of Corporations database was conducted but did not indicate that "Perimeter Solutions LP" is registered in the State of Florida. However, "Perimeter Solutions Inc." is registered to conduct business in the State of Florida and its principal place of business is located

at 8000 Maryland Avenue, Suite 350, Clayton, Missouri 63105. Upon information and belief, Perimeter does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA, PFOS, PFNA, and/or PFHxS.

24.    Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of AFFF. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as additional defendants.

25.    The foregoing Defendants, including the John Doe Defendants, all were manufacturers and/or or sellers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS who manufactured, distributed, and/or sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS that was used on the Property.

26.    When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.   JURISDICTION AND VENUE

27.    This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the citizenship of the Plaintiff is completely diverse from the citizenship of the Defendants, and the amount-in-controversy exceeds $75,000.

28.    Plaintiff brings this civil action directly in *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, Multi-District Litigation ("MDL") No. 2873. Plaintiff files directly in this venue, the United States District Court for the District of South Carolina, Charleston Division, as allowed under the provisions of Paragraphs 25-29 of this Court's Case Management Order No. 3, dated April 26, 2019 (Doc. # 72). Plaintiff designates the United States District Court for the Middle District of Florida, Orlando Division, as its "Home Venue" under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in that District. But for this Court's Order permitting direct filing in this MDL, Plaintiff would have filed in its Home Venue.

29.    All conditions precedent to bringing this action have occurred, have been waived, or otherwise have been performed.

30.    By reason of the conduct by Defendants, described herein, Plaintiff has retained the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to seek recovery of the damages it has incurred and to institute and prosecute this action. For such employment, Plaintiff has agreed to pay its counsel their reasonable attorney's fees and costs and seeks recovery therefor to the extent authorized by applicable law or agreement.

## IV.    FACTUAL ALLEGATIONS

### A.    THE CONTAMINANTS: PFOA, PFOS, PFNA, AND/OR PFHXS

31.    PFOA, PFOS, PFNA, and/or PFHxS are chemicals within a class known as perfluoroalkyl acids ("PFAAs"). PFAAs are part of a larger chemical family known as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is why these molecules are so persistent and bioaccumulate.

32.    PFOA, PFOS, PFNA, and/or PFHxS are highly water soluble, readily transported through the air as well as the soil and groundwater, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

33.    PFOA, PFOS, PFNA, and/or PFHxS are thermally, chemically, and biologically stable in the environment and resistant to biodegradation, atmospheric photo-oxidation, direct photolysis, and hydrolysis. They are difficult and costly to remove from soil and water.

34.    PFOA, PFOS, PFNA, and/or PFHxS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

---

[1] *See* Agency for Toxic Substances and Disease Registry, Per- and Polyfluoroalkyl Substances and Your Health, available at https://www.atsdr.cdc.gov/pfas/PFAS-health-effects.html.

35.    PFOA, PFOS, PFNA, and/or PFHxS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

36.    Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA, PFOS, PFNA, and/or PFHxS.

37.    According to the EPA, "...studies indicate that exposure of PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

38.    The EPA has also warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

39.    PFOA, PFOS, PFNA, and/or PFHxS are found in a number of variety of products and uses prevalent throughout our society.

40.    The EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have

---

[2] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 55, both available at https://www.epa.gov/ground-water-and-drinkingwater/ supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

[3] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available    at    https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-healthadvisories-pfoa-and-pfos.

[4] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822 R-16-002, available at    https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisoriespfoa-and-pfos.

contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example [...] an airfield at which [PFOA/PFOS] were used for firefighting."[5]

41.    PFOA, PFOS, PFNA, and/or PFHxS are primary components of AFFF as used for its intended purposes on Plaintiff's Property.

## B.    THE PRODUCT: AQUEOUS FILM-FORMING FOAM

42.    AFFF is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

43.    The Federal Aviation Administration (FAA) has required and currently requires the Airport to use AFFF as part of its emergency response to control and extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, and hangar fires. The FAA further requires testing and training concerning the use of AFFF in emergency situations.

44.    The Fire Marshal has required and currently requires the use of AFFF at the Airport as part of the fire prevention systems in various hangars.  The Fire Marshal further requires testing and training concerning the use of AFFF in emergency situations.

45.    The AFFF made by Defendants contained PFOA, PFOS, PFNA, and/or PFHxS.

46.    AFFF can be made without PFOA, PFOS, PFNA, and/or PFHxS. Fluorine-free foams do not release PFOA, PFOS, PFNA, and/or PFHxS into the environment; however, such products are not as effective and have not been approved by the FAA for usage. Indeed, the FAA has stated, "Fluorine-free foams on the market today do not match the performance of their fluorinated counterparts. The current firefighting foam is a highly effective combatant to jet fuel

---

[5] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-healthadvisories- pfoa-and-pfos.

fires, but it has also generated concerns over potential environmental and health impacts."[6] Despite knowledge of this fact, as well as knowledge of the toxic nature of AFFF made with PFOA, PFOS, PFNA, and/or PFHxS, Defendants continued to manufacture, distribute and/or sell AFFF with PFOA, PFOS, PFNA, and/or PFHxS, which led to the ongoing contamination and damages to the Property.

47.    AFFF is used for training exercises and also to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

48.    The Plaintiff utilized the product as intended and directed and maintained appropriate safeguards as to their personnel while treating any emergency at the Airport, participating in any training or performing any FAA Part 139 testing at the Airport.

49.    Despite the Plaintiff's best efforts, when used as the Defendants intended and directed, the AFFF sold to and utilized at the Property released PFOA, PFOS, PFNA, and/or PFHxS into the environment.

50.    Once PFOA, PFOS, PFNA, and/or PFHxS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air and groundwater.

51.    Defendants' AFFF containing PFOA, PFOS, PFNA, and/or PFHxS has been used for its intended purpose, with appropriate known safeguards, in the process of fire protection,

---

[6] *See* "FAA Opens One-of-a-Kind Fire Research Facility in Atlantic City," *available at* https://www.faa.gov/news/updates/?newsId=94946&omniRss=news_updatesAoc&cid=101_N_U (last visited July 23, 2020).

11

training, and response activities at the Property for many years. During these activities, AFFF was used as directed and intended by the manufacturer, with all known safeguards, which allowed PFOA, PFOS, PFNA, and/or PFHxS to enter into and onto the Property where these compounds migrated through the subsurface into the groundwater, thereby contaminating the surface, soil, sediment and groundwater, thus causing other extensive and ongoing damages to the Property.

52.    Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to the Property.

### C.    DEFENDANTS' HISTORY OF MANUFACTURING AND SELLING AFFF

53.    Chemguard began to manufacture, market, and sell AFFF in the 1990s.

54.    Perimeter began to manufacture, market, and sell AFFF in the 1960s.

55.    The Defendants knew their customers warehoused large stockpiles of AFFF and touted the shelf-life of AFFF.

56.    While Defendants phased out production or transitioned to new formulas of AFFF in response to pressure from the United States Environmental Protection Agency ("EPA"), they did not instruct users of AFFF that they should not use AFFF that contained PFOS, PFOA, PFNA and/or PFHxS, and/or their precursors.

57.    Defendants further did not act to remove AFFF from the stream of commerce.

58.    Defendants did not warn public entities or others that AFFF would harm the environment, endanger human health, or cause them to incur substantial costs to investigate and clean up contamination of groundwater and other natural resources and to dispose of AFFF.

59.    Accordingly, for many years after the original sale of AFFF, Plaintiff was using the AFFF products over the years, with appropriate safeguards, in various fire-fighting methods, which

resulted in AFFF products being discharged into floor drains and washed into sediments, soils and waters, harming the environment and endangering human health.

60.    Defendants did not properly instruct users, consumers, public officials or those who were in a position to properly guard against the dangers of PFAS how to properly dispose of AFFF or that they needed to properly dispose of their stockpiles of AFFF.

### D.    THE DEFENDANTS' KNOWLEDGE OF PFAS HAZARDS

61.    Defendants knew, or reasonably should have known, among other things, that: (a) PFOS, PFOA, PFNA and/or PFHxS are toxic and bioaccumulate in humans and animals; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOS, PFOA, PFNA and/or PFHxS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.  In addition, PFOS, PFOA, PFNA and/or PFHxS are considered surface water body pollutants/contaminants.

62.    At all times pertinent herein, Defendants also knew or should have known that PFOS, PFOA, PFNA and/or PFHxS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOS, PFOA, PFNA and/or PFHxS are known carcinogens that cause genetic damage.

63.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

64.    Notwithstanding their respective knowledge of the dangers of AFFF made with PFOA, PFOS, PFNA, and/or PFHxS, Defendants negligently and carelessly: (1) designed,

manufactured, marketed, and/or sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA, PFOS, PFNA, and/or PFHxS to contaminate the soil and groundwater in and around the Property; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA, PFOS, PFNA, and/or PFHxS.

65.    As a direct result of Defendants' acts alleged in this Complaint, the Property has been contaminated and will continue to be contaminated with PFOA, PFOS, PFNA, and/or PFHxS, creating an environmental and public health hazard, unless such contamination is remediated. Regardless, as a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA, PFOS, PFNA, and/or PFHxS contamination on its Property at significant expense, loss and damage.

66.    Defendants had and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products. They also had and breached their duty to minimize the environmental harm caused by PFOA, PFOS, PFNA, and/or PFHxS. Moreover, defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from using AFFF with PFOA, PFOS, PFNA, and/or PFHxS in its intended manner for its intended purpose.

### E.    THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY

67.    Established in 1929, the Airport is located on Florida's Space Coast, in southern Brevard County, and is funded through airline fees, tenant leases and federal, state and local grants and receives no direct tax dollars. The Airport includes a rapidly growing aviation-manufacturing-and-maintenance cluster that has made it one of the major centers of aviation commerce in the United States.  A growing number of businesses have expanded or relocated as tenants on the Airport as participants in this economic development.  With more than 6,000 people currently working daily within this economic development area on the Airport property, the area ranks as one of Brevard County's top employment centers.

68.    During the nearly ninety years of operation, there have been multiple incidents at the Airport whereby the need for emergency response and use of AFFF has been necessary. Further, certain testing has been performed at the Airport by both the FAA and the state.

69.    Since 1980, the Fire Training Facility has been training men and women in firefighting and rescue techniques, among other skills. AFFF is used as part of this training. The facility is served by a municipal water supply system.

70.    The Fire Stations are the hub for firefighting and rescue activities, including storing AFFF, as well as filling, maintaining, and washing vehicles carrying and dispensing AFFF.

71.    PFOA, PFOS, PFNA, and/or PFHxS are present in certain areas of the Property. Any detectible level of PFOA, PFOS, PFNA, and/or PFHxS in the Property's soil groundwater, well water, or elsewhere on its property requires further investigation, monitoring and ultimately remediation. The threat of detection and/or presence of PFOA, PFOS, PFNA, and/or PFHxS, at the Property has resulted, and will continue to result, in significant damage to Plaintiff.

72.    The invasion of Plaintiff's Property with PFOA, PFOS, PFNA, and/or PFHxS continues – contamination flows continue on the Property and PFOA, PFOS, PFNA, and/or PFHxS continue to migrate deeper into the Property, resulting in new harm to the Property and Plaintiff on each occasion.

73.    The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the Property. Plaintiff's interests in protecting its Property constitute a reason for seeking damages sufficient to restore such property to its pre-contamination condition.

## **FIRST CAUSE OF ACTION**
### STRICT LIABILITY – DEFECTIVE DESIGN

74.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

75.    Defendants were engaged in the business of researching, designing, manufacturing, testing, distributing, marketing, and selling products containing PFOA, PFOS, PFNA, and/or PFHxS.

76.    Defendants marketed and sold AFFF containing PFOA, PFOS, PFNA, and/or PFHxS for use in controlling and extinguishing aviation, marine, fuel and other flammable liquid fuel fires.

77.    Defendants represented, asserted, claimed, and warranted that their AFFF products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

78.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, Defendants owed a duty

to all persons whom Defendants' products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

79.    The AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used on the Property were used in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

80.    Defendants knew, or should have known, that use of AFFF in its intended manner or in a manner reasonably foreseeable by Defendants would result in the spillage, discharge, disposal, or release of PFOA, PFOS, PFNA, and/or PFHxS into or onto land with associated migration to groundwater.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## SECOND CAUSE OF ACTION

STRICT LIABILITY – FAILURE TO WARN

81.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

82.    As manufacturers, distributors, suppliers, sellers, and marketers of products containing PFOA, PFOS, PFNA, and/or PFHxS, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA, PFOS, PFNA, and/or PFHxS.

83.    Defendants knew that PFOA, PFOS, PFNA, and/or PFHxS would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA, PFOS, PFNA, and/or PFHxS pose to human health and the environment.

84.    Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, downstream handlers, and/or the general public with warnings about the potential

and/or actual contamination of the environment by PFOA, PFOS, PFNA, and/or PFHxS, despite Defendants' knowledge that PFOA, PFOS, PFNA, and/or PFHxS were real and potential threats to the environment. Therefore, Defendants failed to adequate warn of a risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.

85.    AFFF containing PFOA, PFOS, PFNA, and/or PFHxS purchased or otherwise acquired from Defendants was used, discharged, and/or released into or onto the Property.

86.    AFFF containing PFOA, PFOS, PFNA, and/or PFHxS was used in a reasonably foreseeable manner and without substantial change in the condition in which the product was sold.

87.    AFFF containing PFOA, PFOS, PFNA, and/or PFHxS used on the Property was defective in design and unreasonably dangerous for the reasons set forth above.

88.    Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of PFOA, PFOS, PFNA, and/or PFHxS on the Property, including contamination of the soil and groundwater with PFOA, PFOS, PFNA, and/or PFHxS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

89.    In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA, PFOS, PFNA, and/or PFHxS.

90.    As a direct and proximate result of Defendants' above-described failure to give warnings, PFOA, PFOS, PFNA, and/or PFHxS have: (a) posed and continue to pose a threat to the Property; (b) contaminated and continue to contaminate Plaintiff's Property; (c) required and/or will continue to require the investigation and monitoring of the soil and groundwater for PFOA,

PFOS, PFNA, and/or PFHxS contamination; and (d) will require remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination or, where remediation is impracticable, removal and disposal of the contaminated property.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## THIRD CAUSE OF ACTION

STRICT LIABILITY – DAMAGES UNDER 376.313, FLORIDA STATUTES

91.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

92.    Defendants' acts and omissions set forth above caused a prohibited discharge of the pollutants or hazardous substances PFOA, PFOS, PFNA, and/or PFHxS onto the Property.

93.    The contamination created by Defendants' actions requires clean up and/or removal of the PFOA, PFOS, PFNA, and/or PFHxS from the Property.

94.    Plaintiff has been damaged as a direct and proximate result of the acts and omissions of Defendants as set forth above.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## FOURTH CAUSE OF ACTION

TRESPASS

95.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

96.    Plaintiff is the owner and/or actual possessor and/or assignee of rights of the Property and the surface and ground water and other relevant structures located thereon. Defendants knew, or in the exercise of reasonable care should have known, that PFOA, PFOS,

PFNA, and/or PFHxS contaminates soil, surface, and groundwater, including the property and other rights of Plaintiff.

97.    Defendants failed to properly warn against the use of AFFF such that they proximately caused and continue to cause PFOA, PFOS, PFNA, and/or PFHxS to contaminate the Property, including but not limited to its soil, surface, groundwater, and other structures located thereon.

98.    The contamination of the Property has varied over time and has not yet ceased. PFOA, PFOS, PFNA, and/or PFHxS continue to migrate into and enter the Property.

99.    Plaintiff has not consented to, and does not consent to, this contamination.

100.    Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass, and that they had no right or authority to carry out this trespass.

101.    As a direct and proximate result of the trespass, the Property has been damaged and Plaintiff is entitled to abate the trespass and other damages including, but not limited to, diminution in property value, loss of use and enjoyment, cost of bringing the Property to its original condition, investigation, remediation, treatment, and/or to such other appropriate relief.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

### FIFTH CAUSE OF ACTION

NEGLIGENCE

102.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

103.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of PFOA, PFOS, PFNA, and/or PFHxS products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' products might foreseeably harm, to

exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of PFOA, PFOS, PFNA, and/or PFHxS products.

104.    Despite the fact that Defendants knew that PFOA, PFOS, PFNA, and/or PFHxS are toxic, can contaminate soil and water resources, and present significant risks to human health, Defendants negligently breached their duty of care when they: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold products containing PFOA, PFOS, PFNA, and/or PFHxS; (b) issued instructions on how AFFF containing PFOA, PFOS, PFNA, and/or PFHxS should be used and disposed of, thus improperly permitting PFOA, PFOS, PFNA, and/or PFHxS to enter and contaminate Plaintiff's Property; (c) failed to recall and/or warn the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS of the dangers of soil and groundwater contamination as a result of standard use and disposal of this product; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF.

105.    As a direct and proximate result of Defendants' acts and omissions as set forth above, the Property has been, and continues to be, contaminated with PFOA, PFOS, PFNA, and/or PFHxS, causing Plaintiff significant injury and damage. Furthermore, as a direct and proximate result of Defendants' aforementioned acts and omissions, Plaintiff has incurred, is incurring, and will continue to incur significant costs and damages resulting from and associated with the contamination of the Property by Defendants' AFFF made with PFOA, PFOS, PFNA, and/or PFHxS.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## SIXTH CAUSE OF ACTION

CIVIL CONSPIRACY

106.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

107.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that PFOA and PFOS posed to the environment, including the Property.

108.    Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the Plaintiff. Each Defendant performed at least one overt act in furtherance of this conspiracy. Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA, PFOS, PFNA, and/or PFHxS to the public and the government, with the true, unlawful purpose of:

a)  intentionally misrepresenting to the EPA and the public that AFFF containing PFOA, PFOS, PFNA, and/or PFHxS was safe and did not pose a risk to human health and the environment;

b)  concealing the dangers of AFFF containing PFOA, PFOS, PFNA, and/or PFHxS, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA, PFOS, PFNA, and/or PFHxS were being disposed of;

c)  concealing the dangers of PFOA, PFOS, PFNA, and/or PFHxS from consumers and the public; and

    d) using their considerable resources to fight legislation concerning PFOA, PFOS, PFNA, and/or PFHxS.

109. As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

    a) posed and continue to pose a threat to the Property;

    b) contaminated and/or will continue to contaminate the Property;

    c) contaminated and/or will continue to contaminate the soil, surface and groundwater on and within the vicinity of the Property;

    d) required or will require testing and monitoring of the Property for PFOA, PFOS, PFNA, and/or PFHxS contamination;

    e) required or will require remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

    f) diminished Plaintiff's confidence in, and the use and enjoyment of, the Property;

    g) diminished the Property's value due to actual, impending, and/or threatened PFOA, PFOS, PFNA, and/or PFHxS contamination; and

    h) caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its Property.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## SEVENTH CAUSE OF ACTION

PUBLIC NUISANCE

110.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

111.    Defendants manufactured, distributed, marketed, and/or promoted their products containing PFOA, PFOS, PFNA, and/or PFHxS in a manner that created, or participated in creating, a public nuisance that unreasonably endangers or injures the property, health, safety, and comfort of the general public and Plaintiff, causing inconvenience, damage, and annoyance.

112.    Defendants, by their acts and omissions set forth above, have, among other things, knowingly unleashed long-lasting and still spreading PFOA, PFOS, PFNA, and/or PFHxS contamination and threat of contamination to the environment and the Property.

113.    Actual and threatened PFOA, PFOS, PFNA, and/or PFHxS contamination caused by Defendants' conduct has caused, and continues to cause, injury to Plaintiff in the form of present and serious interference with the use, benefit, and/or enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

114.    Defendants' conduct has also injured, and continues to injure, the Property, health, safety, and/or comfort of a considerable number of persons, including a considerable number of persons in Melbourne, Florida, who utilize and/or work at the Property.

115.    PFOA, PFOS, PFNA, and/or PFHxS contamination constitute current, as well as prospective, public nuisances.

116.    Plaintiff suffered a special or particular injury different in degree and in kind from the injury or damages suffered by the public.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

24

## EIGHTH CAUSE OF ACTION

PRIVATE NUISANCE

117.    Plaintiff realleges and incorporates by reference herein all previous factual allegations contained in the preceding paragraphs as though set forth fully herein.

118.    The Property has been contaminated by PFOA, PFOS, PFNA, and/or PFHxS as a direct and proximate result of the acts and omissions of Defendants as set forth above.

119.    PFOA, PFOS, PFNA, and/or PFHxS contamination caused by Defendants' conduct has damaged Plaintiff's Property and interfered with the free use, possession, or enjoyment of Plaintiff's Property, and rendered its ordinary use or occupation physically uncomfortable.

120.    Defendants' conduct has interfered and continues to interfere with Plaintiff's property rights, comfort, and/or safety.

**WHEREFORE**, Plaintiff prays for judgment as described in the Prayer for Relief below.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1.  Compensatory damages, including, but not limited to:

    a)  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA, PFOS, PFNA, and/or PFHxS contamination on and within the Property;

    b)  costs and expenses related to the past, present, and future treatment and remediation of PFOA, PFOS, PFNA, and/or PFHxS contamination of the Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination; and

    c)  costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA, PFOS,

PFNA, and/or PFHxS on and within Plaintiff's Property, or to mitigate further impact.

2.  Consequential damages, including costs and expenses related to replacing Plaintiff's firefighting equipment which has been contaminated;

3.  A determination that this suit was brought in the public interest;

4.  Reasonable attorney's fees under section 376.313, Florida Statute;

5.  Costs and disbursements of this lawsuit;

6.  Pre-judgment and post-judgment interest; and

7.  Any other and further relief as the Court deems just, proper, and equitable.

8.  Plaintiff reserves the right to amend the Complaint to demand punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: July 31, 2020.

Respectfully submitted,

**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**

*/s/ Ralph A. DeMeo*
**RALPH A. DEMEO**
Florida Bar No. 0471763
Primary E-mail: rdemeo@bakerdonelson.com
Secondary E-mail: calford@bakerdonelson.com
Secondary E-mail: jwarmack@bakerdonelson.com
**LAUREN D. BROOKS**
Florida Bar No. 0104847
Primary E-mail: lbrooks@bakerdonelson.com
Secondary E-mail: calford@bakerdonelson.com
Monroe Park Tower
101 North Monroe Street, Suite 925
Tallahassee, FL 32301
P: (850) 425-7500
F: (850) 270-6706

*Attorneys for Plaintiff, City of Melbourne*